UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

THOMAS POWERS,
        Plaintiff,

v.           02-1372

DONALD N. SNYDER, et al.,
        Defendants.

MEMORANDUM OPINION AND ORDER

Before the court are Defendants, LARRY DEATHERAGE, CHARLES McBURNEY, RANDY GOODWIN, JAMES SCHOMIG, EDWIN BOWEN, and MARK PIERSON's (hereinafter IDOC Defendants) summary judgment motion [218], Plaintiff, THOMAS POWERS' response [226] and Defendants' reply [228].

Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in

observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

Plaintiff, Thomas Powers, is an inmate within the Illinois Department of Corrections and currently housed at Dixon Correctional Center. He filed the instant complaint pursuant to 42 U.S.C. §1983, alleging numerous constitutional violations against numerous defendants. At this point in the litigation, the claims remaining against Defendants herein are as follows. First, Defendants Deatherage, McBurney, and Schomig in violation of the Eighth Amendment forced Plaintiff to work at job that required him to perform labor beyond his physical capacity due to bone degeneration and arthritis in one of his hips. [Doc. 205]. Similarly Plaintiff alleges that Defendant refused to allow Plaintiff a walking cane despite his hip condition. [Doc. 205]. Second, Defendants Schomig, Bowen, and Pierson, all former wardens of correctional institutions in which Plaintiff was housed, caused Plaintiff to be exposed to excessive levels of environmental tobacco smoke (ETS). [Doc. 205]. Finally, Plaintiff alleges that Defendant Schomig restricted the visits of Plaintiff's wife, Margie Powers, and friend, Joann Amato, in retaliation for Plaintiff's grievances. [Doc. 205]. These Defendants now move for summary judgment on all claims.

## Undisputed Material Facts.

1. Plaintiff worked as a porter on death row at Pontiac Correctional Center in June and July of 2001. (Plaintiff's Deposition, pg. 88).
2. On June 15, 2001, June 18, 2001, and June 24, 2001, Plaintiff filed grievances, requesting a job change because of pain in his hip. (Affidavit of Becky Williams, Bates Stamp Numbers 8, 11, 13).
3. In response to Plaintiff's grievances the Medical Director examined Plaintiff and found a job restriction was not medically necessary. (Affidavit of Becky Williams, Bates Stamp Numbers 9, 10, 12 , 14).
4. Defendant Deatherage, a correctional lieutenant, was Plaintiff's immediate supervisor for his job on death row in June and July 2001. (Plaintiff's Deposition, pg. 87).
5. Plaintiff alleges that Defendant Deatherage saw the pain Plaintiff was in at work but denied him a job change. (Plaintiff's Deposition, pg. 88).
6. Plaintiff testified that Defendant Deatherage's responses to Plaintiff's requests for a job change was to refer back to Dr. Funk's decision. (Plaintiff's Deposition, pg. 88).
7. Defendant Schomig was warden of Pontiac Correctional Center from July 1999 to May 2002. (Affidavit of James Schomig).
8. Plaintiff alleges that he informed Warden Schomig of the pain he was experiencing while working on death row at Pontiac. (Plaintiff's Deposition, pg. 92).
9. According to Plaintiff, Warden Schomig responded that he relied on Dr. Funk for issues regarding medical care. (Plaintiff's Deposition, pg. 92).

10. Plaintiff wanted Defendant Schomig to tell Dr. Funk that Plaintiff required a job change. (Plaintiff's Deposition, pg. 92).
11. Defendant Schomig is not a medical professional and, during his tenure as warden of Pontiac, relied on the physicians at Pontiac to meet inmates' medical needs, including responding to inmate concerns regarding the appropriateness of certain work assignments. (Affidavit of James Schomig).
12. Plaintiff transferred to Hill Correctional Center in August 2002. (Plaintiff's Deposition, pg. 93).
13. Plaintiff testified that he walked to the dietary department at Hill where he was employed. Plaintiff alleges that as he went to put his cane in the closet, Defendant Goodwin confiscated Plaintiff's cane as Plaintiff was about to put it in a closet. Plaintiff's cane was returned to him the next day. (Plaintiff's Deposition, pg. 94).
14. A day after Plaintiff's cane was returned to him, it was taken again. (Plaintiff's Deposition, pg. 94).
15. Plaintiff does not know if Defendant Goodwin was involved in taking his cane the second time. (Plaintiff's Deposition, pg. 95-96).
16. As a result of Defendant Goodwin's actions, Plaintiff alleges he was without his cane for one day. (Plaintiff's Deposition, pg. 95).
17. In September 2002, Defendant Goodwin was informed that Plaintiff, who was working in dietary, walked with a cane but locked the cane in the coatroom while actually working. Defendant Goodwin contacted healthcare staff out of concern of possible risk of injury to Plaintiff because the floors in the dietary unit are very slippery. Defendant Goodwin's intention was to get Plaintiff reassigned to a different job if Powers required the use of the cane, due to the risk of injury from slipping in dietary. Defendant Goodwin did not hear anything further from healthcare regarding Plaintiff or his cane. (Affidavit of Randy Goodwin).
18. Defendant Goodwin did not confiscate Plaintiff's cane and did not instruct healthcare staff to confiscate the cane. Defendant Goodwin is not a medical professional and defers to medical staff on issues pertaining to inmates' medical needs, such as whether an inmate medically requires a cane. (Affidavit of Randy Goodwin).
19. Contemporaneous with a request for a cane dated August 22, 2002, Plaintiff was observed on the segregation yard running, jumping, and playing basketball. (Affidavit of Becky Williams, Bates Stamp Number 16).
20. Plaintiff's medical progress notes indicate Plaintiff's cane was discontinued by the doctor at Hill on September 11, 2002, with the doctor's note that Plaintiff was observed by security staff working and placing cane in a locker, which confirms inmate is able to work and ambulate without need for a cane. (Affidavit of Becky Williams Bates Stamp Number 19).
21. Plaintiff did not use his cane to walk to either of his depositions in this case, and he testified that frequently since 2001, he has not used his cane when walking from place to place. (Plaintiff's Deposition, pg. 45-46).
22. Plaintiff further testified that from 2001 to 2008, his hip pain has decreased. (Plaintiff's Deposition, pg. 71).

23. In his deposition, Plaintiff abandoned his claims against Defendant McBurney. (Plaintiff's Deposition, pg. 91).
24. Plaintiff testified that he has been diagnosed with no medical condition that is affected by second-hand smoke and does not have asthma. (Plaintiff's Deposition, pg. 10).
25. The only present injuries claimed to be suffered by Plaintiff are headaches, chest pains, and sore throats. (Plaintiff's Deposition, pg. 10).
26. No doctor has instructed Plaintiff to avoid exposure to second-hand smoke. (Plaintiff's Deposition, pg. 13).
27. No doctor has told Plaintiff he faces an increased risk of future harm as a result of exposure to second hand smoke. Plaintiff's claims are based on the potential for future harm that he read about in an American Medical Association Report. (Plaintiff's Deposition, pg. 17).
28. Smoking is banned in all IDOC facilities. See Public Act 95-0017 (eff. Jan. 1, 2008). Plaintiff confirmed that his current institution is smoke free. (Plaintiff's Deposition, pgs. 86-87).
29. Margie Powers is Plaintiff's former wife, and Joann Amato is Plaintiff's friend. (Plaintiff's Deposition, pgs. 18, 24).
30. On July 5, 2001, Margie Powers and Joann Amato were found to be in possession of approximately 4.9 grams of marijuana on State property at Pontiac Correctional Center and arrested by state police. (Affidavit of Becky Williams, Bates Stamp Numbers 1, 2; Plaintiff's Deposition, pg. 22).
31. Margie Powers and Joann Amato were permanently restricted from visiting IDOC facilities as a result of their possession of marijuana. (Affidavit of Becky Williams, Bates Stamp Numbers 1, 2; Plaintiff's Deposition, pg. 22).
32. It was standard procedure at Pontiac for decisions regarding visitor restrictions to be delegated from the Warden to the Assistant Warden of Operations. (Affidavit of James Schomig).
33. The initial decision to permanently restrict Powers' and Amato's visiting restriction was made by Pontiac's Assistant Warden of Operations, Alex D. Jones. (Affidavit of Becky Williams, Bates Stamp Numbers 1, 2).
34. On January 9, 2002, restoration of Powers' and Amato's permanent visiting restriction was denied by Centralia Correctional Center Assistant Warden of Operations Malcolm Davidson. (Affidavit of Becky Williams Bates Stamp Numbers 3, 4).
35. On April 5, 2002, Centralia Assistant Warden of Operations David L. Miller responded to Plaintiff's letter to Defendant Schomig regarding restoration of visiting privileges to Margie Powers and Joann Amato. Assistant Warden Miller declined to lift the visiting restriction. (Affidavit of Becky Williams, Bates Stamp Number 5).
36. On October 1, 2002, restoration of Powers' and Amato's permanent visiting restriction was denied by the Chief of the Bureau of Operations for IDOC. (Affidavit of Becky Williams, Bates Stamp Numbers 6, 7).
37. Powers' and Amato's visiting restrictions were lifted in August 2005. (Plaintiff's Deposition, pg 24).

38. Plaintiff has never spoken with Defendant Schomig or received written correspondence from Defendant Schomig regarding Powers' and Amato's visiting restrictions. (Plaintiff's Deposition, pg 26-27).
39. Defendant Schomig did not participate in the decision to restrict Powers' and Amato's visiting privileges. The restriction was imposed by the Assistant Warden of Operations. Defendant Schomig did not participate in denying the reinstatement of Powers' and Amato's visiting restrictions. (Affidavit of James Schomig).
40. The Plaintiff's pain was the worse on a scale of 1-10, being a 10 under Dr. Funk's care. (Plaintiff's Deposition, pg. 70, lines 20-23).
41. Plaintiff has been diagnosed with degenerative hip disease on June 4, 2001.
42. Dr. Funk did not order the Plaintiff a cane or low bunk.
43. Dr. Obaisi intentionally interfered with the Specialist's July 17, 2002 order by confiscating the Plaintiff's cane which gave his symptomatic relief.

Disputed Facts

1. The Defendants know of the risks of exposure to high levels of ETS.
2. Defendant Schomig retaliated against the Plaintiff for filing grievances.

The plaintiff offered a total of 21 additional undisputed material facts. However, the court finds that the following of those are immaterial to claims against the IDOC Defendants: 2 (also conclusory), 4 (as to the low bunk permit), 6 ( vague as to the time frame), 7, 8, 9, 13, 15, 16, and 20. The following facts are unsupported: 7, 16 and 19. The following facts are conclusory and unsupported: 10, 11, and 18.

Discussion and Conclusion of Law

The IDOC Defendants argue that they are entitled to summary judgment on the plaintiff's claim of deliberate indifference to his serious medical need. To establish a defendant was deliberately indifferent to an inmate's serious medical needs, a plaintiff cannot prevail on allegations of negligence or even gross negligence. *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). Rather, a Plaintiff must show the defendant's acts constituted an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To raise an Eighth Amendment issue, 'the infliction [of punishment] must be deliberate or otherwise reckless in the criminal law sense, which means that the Defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the Defendant actually knew of an impending harm easily preventable.'" *Snipes v. Detella*, 95 F.3d at 590, quoting Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir. 1995).
"A plaintiff must prove deliberate indifference, evidenced by either actual intent or reckless disregard." *Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985) overruled in part by *McGill*

*v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)[1]. The recklessness required before a finding of deliberate indifference could be made, is recklessness as defined in criminal law. *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985). The court used as an example of criminal recklessness, the situation where a person deliberately chokes a person without intention of killing that person, yet the victim dies. That example suggests that "recklessness in the criminal law implies an act so dangerous that the defendant's knowledge of the risk can be inferred." *Id*.

In the context of a claim of deliberate indifference to a serious medical condition, prison administrators must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment. *McEahern v. Civiletti*, 502 F. Supp. 531, 534 (N.D. Ill. 1980); see also *Allen v. City of Rockford*, 349 F. 3rd 1015, 1020 (7th Cir. 2003) (Government employees are entitled to rely on a physician's determination of the best way to treat a patient). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Foulker v. Outagamie County*, 394 F.3d 510, 512 (7th Cir. 2005). Additionally, a medical condition is serious where the failure to treat the prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Gutierrez v. Peters*, 11 F.3d 1364, 1373 (7th Cir. 1997). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Gutierrez*, 11 F.3d at 1373.

Plaintiff alleges that Defendants Deatherage and Schomig were deliberately indifferent to his serious medical condition by not changing his job assignment at Pontiac Correctional Center, despite observing that Plaintiff was in pain while performing the job. To prevail on his claim against Defendants Deatherage and Schomig, Plaintiff would need to show more than that Defendants knew or should have known that Plaintiff was medically restricted from work and that Defendants nonetheless required him to work. Plaintiff is required to show that Defendants either required him to work intentionally to cause him harm or forced him to do the work when the harm to Plaintiff was so obvious that Defendants had to know about it. Plaintiff has proven his case against Defendants Deatherage and Schomig because Dr. Funk had examined Plaintiff and found a medical work restriction unnecessary. (Undisputed Material Fact 3). An essential element of Plaintiff's claim is showing that he faced a substantial risk of serious harm and Defendants knew of such risk and deliberately ignored it. Plaintiff cannot prevail on this claim where his treating physician concluded that Plaintiff did not face a substantial risk of serious harm by performing his job. The course of action Plaintiff alleges was constitutionally required was expressly found unnecessary by Plaintiff's own doctor. Plaintiff's complaint demonstrates

---

[1] *McGill* overruled Benson's objective standard in defining "recklessness" and adopted, instead, the subjective standard as set out in Duckworth v. Franzen, 780 F.2d 645 (7 Cir. th 1985). This standard was later adopted by the United States Supreme Court in Farmer v. Brennan, 511 U.S. 825 (1994).

at most his disagreement with Dr. Funk's medical decisions. Defendants Deatherage and Schomig are entitled to summary judgment for their reasonable reliance on Dr. Funk's decisions.

In his complaint, Plaintiff alleged that Defendant McBurney, similar to Defendants Deatherage and Schomig, was deliberately indifferent to his serious medical needs with regard to Plaintiff's job assignment at Pontiac. [Complaint, 2 and Doc. 205]. However, in his deposition, Plaintiff was asked the following questions and gave the following answers:

> Q: Okay. Let's talk about McBurney. How do you know Mr. McBurney?
> A: Mr. McBurney, who was a captain at the time, became a major, was in charge of job placements.
> Q: I think you indicated in the—in our hearing that you no longer—
> A: I don't—he never visually observed.
> 12
> Q: So what is the basis of your claim against Mr. McBurney?
> A: As I stated, he probably should be dismissed.

(Undisputed Material Fact 23). Defendants argue that because Plaintiff abandoned his claim against Defendant McBurney, summary judgment should be granted in Defendant McBurney's favor. Even if Plaintiff has not abandoned his claim against Burney, it is dismissed for the same reasons this claim is dismissed against Deatherage and Schomig. See above.

Plaintiff alleges that, while he was incarcerated at Hill Correctional Center and working at the dietary department, in August 2002, Defendant Goodwin confiscated Plaintiff's walking cane. Specifically, Plaintiff alleges that as he was putting his cane into a closet at the dietary department, Defendant Goodwin took it. The cane was returned to Plaintiff the next day. Therefore, Plaintiff alleges, as a result of Defendant Goodwin's actions, he was without his cane for one day. On September 11, 2002, Plaintiff's cane was discontinued by the doctor at Hill.
Here, the attached medical records show that it was medical staff that made the decision to discontinue Plaintiff's cane, not Defendant Goodwin. (Undisputed Material Fact 20). Even assuming for the sake of argument, healthcare staff's discontinuation of Plaintiff's cane was an Eighth Amendment violation, Defendant Goodwin cannot be liable for that violation simply for contacting healthcare staff about the cane where healthcare staff discontinued the cane. *See Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (evidence that a defendant unleashed a chain of events that ultimately led to a constitutional violation is insufficient personal involvement to survive summary judgment). Defendant Goodwin simply called the issue to the healthcare's attention, and they handled it as they saw fit.

Moreover, Plaintiff's hip condition is not a serious medical need. Plaintiff's own testimony was that the cane was confiscated when he put it in a locker because he was not going to use it while working. (Undisputed Material Fact 13). Plaintiff was observed

running, jumping, and playing basketball on the yard; this is contemporaneous with when he alleges he needed the cane. (Undisputed Material Fact 19). Clearly, his daily activities were not significantly affected. Plaintiff further testified that his hip has improved from 2001 to 2008 and Plaintiff did not use the cane to walk to his deposition in the instant case on January 30, 2008. (Undisputed Material Facts 21, 22). A serious medical need is one diagnosed by a doctor as requiring treatment. Here, Plaintiff's condition was not one that required treatment, as the doctor discontinued Plaintiff's cane on September 11, 2002. (Undisputed Material Fact 20). Prison administrators must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment. *McEahern v. Civiletti*, 502 F. Supp. 531, 534 (N.D. Ill. 1980); *see also Allen v. City of Rockford*, 349 F. 3ed 1015, 1020 (7th Cir. 2003)(Government employees are entitled to rely on a physician's determination of the best way to treat a patient). Furthermore, under general principles of tort law, a plaintiff may only recover monetary damages when a defendant breaches a duty owed to the plaintiff and the breach causes cognizable legal harm. *Babcock v. White*, 102 F.3d 267, 271 (7th Cir. 1996). A plaintiff cannot survive summary judgment if he has sustained no actual damages. *Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir. 1983). As a result of Defendant Goodwin's actions, Plaintiff was without his cane for one day. (Undisputed Material Fact 16). Plaintiff does not allege any injury occurred on that day as a result of not having his cane. Plaintiff has no evidence to support any injury that resulted from Defendant Goodwin's purported actions. Therefore, a serious injury caused by Defendant Goodwin is a prerequisite to liability. So for the reasons discussed, Defendant Goodwin is entitled to summary judgment.

Defendants, Schomig, Bowen and Pierson are entitled to summary judgment as to the Plaintiff's claim for exposure to ETS. Plaintiff has not suffered a serious health problem as a result of exposure to ETS. To prevail on a claim that his constitutional rights were violated by exposure to second hand smoke, a plaintiff must prove he suffered serious health problems caused by the exposure. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). The plaintiff in *Henderson* 196 F.3d at 842, alleged he experienced difficulty in breathing, chest pains, dizziness, drowsiness, sinus problems, burning sensations in this throat and headaches. The court found that such ailments were relatively minor and not so serious as to satisfy the Eighth Amendment. *Henderson*, 196 F.3d at 846. Discomfort from the aggravation of asthma is not constitutionally actionable. *Henderson*, 196 F.3d at 846, *citing Oliver v. Deen*, 77 F.3d 156 (7tj Cir. 1996). Plaintiff testified that he has been diagnosed with no medical condition that is affected by second-hand smoke and does not have asthma. (Undisputed Material Fact 24). The only present injuries claimed to be suffered by Plaintiff are headaches, chest pains, and sore throats. (Undisputed Material Fact 25). Plaintiff further admitted that no doctor has instructed him personally to avoid exposure to second-hand smoke. (Undisputed Material Fact 26). The injuries Plaintiff complains of are of the exact nature that the Seventh Circuit has held are not serious enough to state a claim under the Eighth Amendment. *See Henderson*, 196 F.3d at 846. Plaintiff has not stated a cause of action for present injuries caused by second hand smoke.

Plaintiff has no evidence of future injuries. In addition to claims based on present injuries, a plaintiff may also state a cause of action based on prison officials' deliberate indifference to

conditions posing an unreasonable risk of damage to the prisoner's future health. *Henderson*, 196 F.3d at 846-47, *citing Helling v. McKinney*, 509 U.S. 25, 33-5 (1993). To withstand summary judgment on a claim of future damages from exposure to second hand smoke, a plaintiff must proffer competent and reliable expert medical testimony that there is a reasonable medical certainty that the plaintiff himself faces some defined level of increased risk of developing a serious medical condition and that this increased risk was proximately caused by his exposure to second hand smoke while incarcerated at the prison in question. *Henderson*, 196 F.3d at 852. Here, no doctor has ever told Plaintiff he faces an increased risk of harm as a result of exposure to second hand smoke. (Undisputed Material Fact 27). Plaintiff's claims are based on an American Medical Association report. (Undisputed Material Fact 27). Moreover, Plaintiff has not disclosed any expert testimony in this case. Given the complete absence of any evidence that the Plaintiff faces an increased risk of future harm due to exposure to second hand smoke, Defendants are entitled to judgment on this issue.

Plaintiff's claim for injunctive relief is barred by sovereign immunity because there is no ongoing constitutional violation. Judicial powers may only be exercised on the basis of a constitutional violation. *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). The Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985), citing Ex Parte Young, 209 U.S. 123 (1908). However, absent an ongoing constitutional violation, a federal court cannot grant injunctive relief. *Al-Alamin*, 926 F.2d at 688. As of January 1, 2008, smoking is banned in all public places and places of employment in the State of Illinois. See Public Act 95-0017 (eff. Jan. 1, 2008). (Undisputed Material Fact 31). Plaintiff testified that as of January 1, 2008, smoking is banned at his current institution, Dixon Correctional Center. (Undisputed Material Fact 28). Accordingly, because there is no ongoing constitutional violation with regard to exposure to second-hand smoke, this court lacks jurisdiction to order injunctive relief.

The court also finds that Defendant Schomig is entitled to summary judgment on Plaintiff's claim for retaliation. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir.2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir.2000); *Babcock v. White*, 102 F.3d 267 (7th Cir.1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988). To prevail on a retaliation claim, a prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in a defendant's actions. *Hasan v. United States Department of Labor*, 400 F.3d 1001, 1005-1006 (7th Cir. 2005). "A motivating factor is a factor that weighs in the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." *Hasan*, 400 F.3d at 1006. "Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct." *Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004).

Defendant Schomig was not personally involved in the alleged retaliatory conduct. He was not personally involved in the decision to restrict Margie Powers and Joann Amato from visiting IDOC facilities. (Undisputed Material Fact 41). Section 1983 creates a cause of action based on personal liability and fault. *Wolfe-Lillie v. Sonquist*, 699 F.2d 864, 869 (1983). An individual cannot be held liable unless he caused or participated in an alleged constitutional deprivation. *Wolfe-Lillie*, 699 F.2d at 869. Section 1983 liability cannot be based on a respondeat superior theory. *Wolfe-Lillie*, 699 F.2d at 869. Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. *Wolfe-Lillie*, 699 F.2d at 869. A causal connection or affirmative link between the conduct complained of and the individual sued must exist. *Wolfe-Lillie*, 699 F.2d at 869, *citing Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

On July 5, 2001, Margie Powers and Joann Amato were found to be in possession of approximately 4.9 grams of marijuana on state property at Pontiac Correctional Center. (Undisputed Material Fact 30). They were permanently restricted from visiting all IDOC facilities. (Undisputed Material Fact 31). The decision to permanently restrict Margie Powers and Joann Amato was made by Pontiac Correctional Center's Assistant Warden of Operations, Alex D. Jones, not Defendant Schomig. (Undisputed Material Facts 33-36, 39). Moreover, the denials of reinstatement of Powers' and Amato's visiting privileges were not made by Defendant Schomig. (Undisputed Material Facts 34-36, 39). Powers' and Amato's visiting restriction was lifted in August 2005. (Undisputed Material Fact 37). Plaintiff has never personally spoken to Defendant Schomig regarding the visiting restriction and has never received any written information regarding the incident from Defendant Schomig. (Undisputed Material Fact 38). The denials came from Defendant Schomig's Assistant Warden of Operations. Here, no evidence exists that Defendant Schomig was personally involved in the decision to restrict Powers and Amato from IDOC facilities. (See Undisputed Material Facts 33-36, 39). The most that can be said is that Defendant Schomig supervised some of the people who made the decisions. However, without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. *See Wolfe-Lillie*, 699 F.2d at 869. Because no evidence exists of Defendant Schomig's personal involvement in restricting Margie Powers' and Joann Amato's visiting privileges, Defendant Schomig is entitled to summary judgment on this claim.

Finally, it is very evident to this court that Powers and Amato were restricted from visiting all IDOC facilities because they brought marijuana on the property, not for the reason the Plaintiff claims. The Plaintiff knows this too. The court finds that the Plaintiff' claim of retaliation was improperly brought by the Plaintiff and was brought to harass the Defendant, Schomig. In fact, this claim is malicious. This Plaintiff knows that prison officials had legitimate, non-retaliatory reasons for restricting Powers and Amato from IDOC facilities – their bringing drugs onto State property at Pontiac Correctional Center. The Plaintiff knew this before he brought his claim against Schomig claiming Schomig retaliated against him for filing grievances against Schomig.

The retaliation inquiry must be undertaken in light of the general tenor of Sandin, "which specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management." *Pratt v. Rowland*, 65 F.3d 802, 807 (7th Cir. 1995). The court "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate

penological reasons for conduct alleged to be retaliatory." *Babcock*, 102 F.3d at 275, *quoting Pratt*, 65 F.3d at 807. Bringing cannabis into a penal institution is a Class 4 felony. See 720 ILCS 5/31A- 1.1(e) (West 2006). It is undisputed that Powers and Amato were found to be in possession of cannabis at Pontiac Correctional Center. The transportation of illegal drugs onto state property at a maximum security prison constitutes a legitimate penological reason for restricting Powers and Amato's visiting privileges. Prison officials are given deference to ban those who break state law by bringing contraband into a penal institution by restricting those individuals from coming in the prison. Moreover, according to IDOC regulations, visitors may be permanently restricted for possession of drugs or drug paraphernalia or violation of state law, including arrest or conviction based on any action taken during a visit. 20 Ill. Admin. Code §525.60(g)(4), (g)(10) (2008). Plaintiff has absolutely no evidence (only his prevarications) that Powers and Amato were banned from IDOC facilities in retaliation for any protected conduct and not for the proffered reason—bringing marijuana onto state property at Pontiac. *See Springer v. Durflinger*, Nos. 06-2168, 06-2516, slip. op. at 9 (7th Cir. February 29, 2008)(challenges to a witnesses credibility alone without proof from independent facts is insufficient to survive summary judgment). Defendant Schomig is entitled to and granted summary judgment.

IT IS THEREFORE ORDERED:

1. The Defendant's motion for summary judgment is granted [d/e 218]. The clerk of the court is directed to enter judgment in favor of the Defendants, LARRY DEATHERAGE, CHARLES McBURNEY, RANDY GOODWIN, JAMES SCHOMIG, EDWIN BOWEN, and MARK PIERSON and against the Plaintiff at the close of this case. The clerk of the court is directed to terminate these defendants, forthwith.
2. If the plaintiff wishes to appeal this order, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 26th day of March 2009.

s\Harold A. Baker
_____
Harold A. Baker
United States District Judge